IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIDGET SOWERS,

      Plaintiff,

vs.              Case No. 11-1306-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

      Defendant.


MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous

work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 1, 2011, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 10-22). Plaintiff alleges that she has been disabled since March 18, 2008 (R. at 66). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus; peripheral neuropathy (upper and lower extremities); history of bilateral carpal tunnel; back pain; gastroesophageal reflux disease; obesity; hypertension; migraines; asthma; and, rule out congested heart failure and/or heart murmur (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 20). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 20-21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Did the ALJ err in finding that plaintiff did not have a severe mental impairment?**

In April 2009, plaintiff's treating therapist opined that plaintiff was not significantly limited in 20 different mental health categories (R. at 774-775).  On May 26, 2010, Dr. Schwartz, a consultative psychologist, after an interview with the plaintiff, opined that plaintiff was severely depressed, which he believed would interfere with her functioning on the job (R. at 910-911).  On July 21, 2010, Dr. Schwartz performed an IQ test and a MMPI (Minnesota Multiphasic Personality Inventory) test on the plaintiff (R. at 938-940).  The ALJ correctly noted that the MMPI test interpretation was "invalid and uninterruptible" due to indications of over reporting (R. at 13, 940).  The ALJ also correctly noted that Dr. Schwartz reported that plaintiff's low IQ scores were surprising given her ability to receive an AA degree and obtain licensing in cosmetology and as a nursing assistant (R. at 13, 938).  Dr. Schwartz also opined on July 21, 2010 that plaintiff had moderate impairments in five categories[1] (R. at 935-936).  The ALJ gave no weight to the opinions and test results of Dr. Schwartz in light of the questions concerning the IQ test results, and the finding of Dr. Schwartz that the MMPI test results were invalid due to over reporting (R. at 13).  The ALJ instead relied on the findings of plaintiff's treating

---

[1] Moderate impairments was defined on the form filled out by Dr. Schwartz as more than a slight limitation, but that the individual is still able to function satisfactorily (R. at 935).

therapist, and concluded that plaintiff's mental impairments were nonsevere (R. at 13).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ can reasonably give greater weight to the opinions of a treating therapist, who opined that plaintiff was not significantly limited in any of 20 mental health categories. Thus, the court finds no clear error by the ALJ in his finding on this issue.

**IV. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530

n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

     The ALJ made the following RFC findings:

> The claimant can lift and/or carry 10 pounds occasionally, and nominal weight frequently. She can stand 2 hours in an 8-hour workday. The claimant can sit 6 hours in an 8-hour workday. The claimant needs to alternate sit and stand every 30 to 40 minutes. She can do frequent fingering and handling. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

(R. at 15).  The record in the case only contains one physical RFC assessment, which was performed by Dr. Timmerman, a non-examining physician who examined the record in the case (R. at 631-638).  Dr. Timmerman opined that plaintiff had no exertional limitations (ability to lift/carry, ability to stand, sit and/or walk), no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations, with the exception that plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (R. at 631-635).  The ALJ stated that he gave this opinion "some" weight, but further stated that plaintiff's RFC was more limiting based upon additional medical evidence and testimony (R. at 15).  However, despite the fact that Dr. Timmerman opined that plaintiff should avoid even moderate exposure to fumes, odors, dusts, etc., the ALJ, without explanation, found that plaintiff need only avoid concentrated exposure to fumes, odors, dusts, etc. (R. at 15, 635).  Thus,

even though the ALJ stated that his RFC is more limiting than the RFC assessment by Dr. Timmerman, the ALJ, without explanation, found plaintiff to have a less severe limitation in the one category in which Dr. Timmerman found a limitation. Furthermore, the ALJ also included in his RFC findings numerous limitations not in Dr. Timmerman's assessment, including various exertional limitations, and a manipulative limitation of frequent fingering and handling, as opposed to continuous fingering and handling (R. at 15, 88-89, 90).

However, there was no other medical evidence regarding plaintiff's RFC. Plaintiff's treating physician, Dr. Conant, stated on June 13, 2007 that plaintiff had been disabled since January 9, 2007 (R. at 584); however, Dr. Conant provided no further explanation for this opinion, and did not offer any opinions regarding plaintiff's limitations. The ALJ stated that the opinion of Dr. Conant was not supported by the medical evidence, and the ALJ accorded no weight to this opinion (R. at 19).

Based on the RFC findings by the ALJ, which limited plaintiff to sedentary work, and the need for position alternation, the vocational expert (VE) testified that plaintiff could not perform 85-90% of the sedentary job base (R. at 89-91). Thus, the ALJ, despite rejecting the opinion of Dr.

Conant, plaintiff's treating physician, that plaintiff was disabled, made RFC findings which limited plaintiff to only 10-15% of sedentary work, while rejecting the RFC opinions of Dr. Zimmerman that plaintiff had no limitations in lifting, standing, fingering or handling.  The ALJ also included a need for position alternation between sitting and standing every 30-40 minutes even though no such limitation was contained in Dr. Zimmerman's assessment.  Thus, the ALJ made RFC findings which were far more limiting than the RFC assessment by Dr. Zimmerman, except that the ALJ found that plaintiff's environmental limitation was not as severe as Dr. Zimmerman indicated.

    SSR 96-8p states the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence.

1996 WL 374184 at *7.  SSR 96-8p is defendant's own requirement, a ruling promulgated by the Commissioner.  SSR rulings, as noted above, are binding on the Commissioner.  In support of his lifting limitation, the ALJ indicated the following:

> …she underwent successful carpal tunnel release in 2006…Following the carpal tunnel release surgery, she recovered and was reported to be asymptomatic…Physical examination showed normal grip strength and excellent range of motion in her fingers…However, the claimant reports numbness in the tips of her fingers and

11

>    difficulty pinching things, which may be a
>    residual of the bilateral carpal tunnel
>    release…As a result, the undersigned has
>    limited the claimant to lifting no more than
>    10 pounds.

(R. at 16).  In support of his findings regarding plaintiff's ability to sit and stand, and the need for alternation of sitting and standing every 30-40 minutes, the ALJ stated the following:

>    Overall, there still does not appear to be
>    objective medical findings that explain the
>    alleged numbness and tingling.  Doppler of
>    the lower extremities obtained in January
>    2008 found no evidence of deep venous
>    thrombosis in either leg…Neither Dr.
>    Almsaddi nor Dr. Shahzad limited the
>    claimant's activity in any way.  The
>    claimant reported that she could perform
>    daily activities, which included light house
>    work, caring for her children, shopping, and
>    attending church weekly…Medical records
>    consistently document the claimant having a
>    normal gait.  Considering the claimant's
>    statements and testimony as well as the
>    various medical reports, it is reasonable to
>    conclude that the claimant can stand at
>    least two hours in an 8-hour workday, with
>    alternation of sit and stand every 30 to 40
>    minutes.  The claimant can sit 6 hours in an
>    8-hour workday.  These limitations are
>    reasonable for these alleged symptoms.

(R. at 17).

   However, these findings are not supported by any medical evidence in the record, and thus represent the personal medical opinion of the ALJ.  Kemp v. Bowen, 816 F.2d 1469, 1475

(10th Cir. 1987). Furthermore, the ALJ fails to explain why the evidence cited would support a lifting limitation of 10 pounds, as opposed to a more severe limitation. Likewise, the ALJ fails to explain why it is reasonable to conclude that the evidence demonstrates that the plaintiff can stand for 2 hours or could work with alternation of 30-40 minutes, as opposed to more severe limitations. In making the latter finding, the ALJ relied on plaintiff's daily activities, including the ability to perform light housework and attend church. However, the sporadic performance of daily activities does not establish that a person is capable of engaging in substantial gainful activity. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). The ability to engage in light housework, visiting with friends or attending church does not qualify as the ability to do substantial gainful activity. Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005). Furthermore, the ALJ provided no explanation for limiting plaintiff to frequent fingering and handling, as opposed to a more severe limitation, and the ALJ provided no explanation for finding that plaintiff's environmental limitation was not as severe as Dr. Zimmerman had indicated in his assessment. The evidence presented by the ALJ does not provide substantial evidence in support of his RFC

findings, especially in light of the fact that it is not supported by any medical opinion evidence.

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence. The court stated that no other medical evidence in the record specifically addressed her ability to work. The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so

> clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741; see Martin v. Astrue, Case No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

In the case before the court, the only medical evidence in the record directly addressing plaintiff's RFC (Dr. Zimmerman's RFC assessment) was given very little weight. In fact, the ALJ rejected every one of Dr. Zimmerman's opinions. The ALJ found numerous limitations not contained in Dr. Zimmerman's assessment, while also finding that the one limitation contained in Dr. Zimmerman's assessment was not as severe as indicated by Dr. Zimmerman. There is no other medical evidence in the record which specifically addresses plaintiff's physical limitations, and the ALJ failed to cite to substantial evidence to support his RFC findings. Dr. Conant, plaintiff's treating physician, opined that plaintiff was disabled, but did not address or set forth any specific physical limitations. As in Fleetwood, to the extent there is very little medical evidence directly addressing plaintiff's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.

When this case is remanded, the ALJ shall develop a sufficient record on which to make RFC findings. The ALJ should consider recontacting plaintiff's treating physician (20 C.F.R. § 404.1520b(c)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003). The ALJ could also consider having a medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[2]

**V. Other issues raised by the plaintiff**

Plaintiff also asserts error by the ALJ regarding the weight to be accorded to plaintiff's testimony and plaintiff's obesity. The court will not discuss these issues in detail because they may be affected by the ALJ's resolution of the case on remand after obtaining additional medical evidence regarding plaintiff's RFC. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

---

[2] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971). Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision. Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of November 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge