IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIDGET SOWERS,

Plaintiff,

vs. Case No. 11-1306-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

Defendant.

MEMORANDUM AND ORDER

On November 6, 2012, this court issued a memorandum and order reversing the decision of the Commissioner and remanding the case for further hearing (Doc. 16). On November 28, 2012, defendant filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(a) (Doc. 18). Plaintiff filed a response on December 12, 2012 (Doc. 19). No reply brief was filed.

As an initial matter, defendant asserted the following:

> Specifically, the Court remanded this case based on its finding that absent "medical evidence directly addressing plaintiff's RFC [residual functional capacity], the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination." *See Order* at p. 15.

(Doc. 18 at 2, emphasis added). In fact, the court order was as follows:

> As in Fleetwood, to the extent there is very little medical evidence directly addressing plaintiff's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.

(Doc. 16 at 15). The court did not say "absent" medical evidence directly addressing plaintiff's RFC, but that "there is very little medical evidence" directly addressing plaintiff's RFC. The court opinion makes clear that Dr. Timmerman[1] performed a physical RFC assessment (Doc. 16 at 9). However, there was no other medical evidence in the record that directly assessed plaintiff's RFC. Dr. Conant, plaintiff's treating physician, opined that plaintiff had been disabled since January 9, 2007 (R. at 584), but he did not offer any opinions regarding plaintiff's limitations.

The central problem in this case stems from the lack of medical evidence directly addressing plaintiff's RFC. As the court stated in its decision:

> In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence. The court stated that no other

[1] The court inadvertently sometimes referred to Dr. Timmerman as Dr. Zimmerman in its order of November 6, 2012.

medical evidence in the record specifically addressed her ability to work. The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

> Fleetwood, 211 Fed. Appx. at 740-741; see Martin v. Astrue, Case No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

(Doc. 16 at 14-15). As the court noted in its opinion, none of the ALJ's RFC findings correlate with any of the opinions of Dr. Timmerman. The ALJ's RFC findings were in most instances more limiting than those of Dr. Timmerman, but in one instance they were less limiting than those of Dr. Timmerman (Doc. 16 at 9-11).

The ALJ provided an explanation for limiting plaintiff to lifting no more than 10 pounds (Doc. 16 at 11-12; R. at 16), and also provided an explanation for his RFC findings regarding plaintiff's ability to sit and stand (Doc. 16 at 12; R. at 17). However, as noted by the court, the explanation failed to provide a convincing or reasonable rationale for a lifting limitation of 10 pounds, as opposed to a more severe limitation, or for concluding that plaintiff can stand for 2 hours or could work with alternation of 30-40 minutes, as opposed to more severe limitations. The evidence cited to by the ALJ in his decision does not provide clear support for the RFC limitations found by the plaintiff. The court also indicated concern about the ALJ's reliance on plaintiff's daily activities in support of these findings, which as the court indicated, do not establish that plaintiff is capable of performing substantial gainful activity (Doc. 16 at 13).

The court also noted that the ALJ provided no explanation for limiting plaintiff to frequent fingering and handling, as opposed to a more severe limitation (Doc. 16 at 13). However, the court overlooked the fact that the ALJ did provide an explanation for limiting plaintiff to avoid concentrated exposure to fumes, odors, etc. (R. at 15) instead of avoiding even moderate exposure to fumes, odors, etc. as opined by Dr. Timmerman (R. at 635). The ALJ found that essentially normal pulmonary function test results do not support any significant breathing problems, and therefore only limited plaintiff to avoid concentrated exposure to fumes, odors, etc. (R. at 18). However, the medical record cited by the ALJ makes no reference to "the essentially normal pulmonary function test results" (R. at 18) as stated by the ALJ. What the record did state regarding this test was as follows:

> …The PRT does not seem to be very severe other than some mild expiratory constriction reflected of the EF 25%, which improved to 24% after albuterol.

(R. at 622). The medical report then indicates that plaintiff will continue on albuterol and asthma treatment (R. at 622). First, the ALJ misstated the evidence when he indicated that the PFT test was essentially normal, when that is not indicated in the medical records. Second, the ALJ has failed to provide a convincing or reasonable rationale for finding that this test

result demonstrates that plaintiff need only avoid concentrated exposure to fumes, odors, etc., especially when Dr. Timmerman indicated a more restrictive limitation.

It is for these reasons that the court found that, as in Fleetwood, to the extent there is very little medical evidence directly addressing plaintiff's RFC, the ALJ made unsupported findings concerning her functional abilities. In this case, the only medical evidence directly addressing plaintiff's RFC was that of Dr. Timmerman. The ALJ did not adopt any of his opinions. None of the ALJ's RFC findings are clearly supported by any evidence. The ALJ simply summarizes medical and other evidence, and then makes RFC findings. However, the ALJ failed to provide a convincing or reasonable rationale for any of his RFC findings.

In Fleetwood, the ALJ generally agreed with the opinions contained in a check-the-box evaluation form from the state agency. There was no other medical evidence directly addressing the claimant's ability to work. The court held that, to the extent that there was very little medical evidence directly addressing the claimant's RFC, the ALJ made unsupported findings concerning her functional abilities. Fleetwood, 211 Fed. Appx. at 740. In the case before the court, unlike Fleetwood, the ALJ did not adopt or agree with any of the RFC findings in the state agency assessment when making his RFC findings; and, as was the

case in Fleetwood, there was no other medical evidence in the record directly addressing plaintiff's ability to work. Thus, the need for medical evidence directly addressing plaintiff's ability to work is even more pronounced than was the case in Fleetwood.

Defendant argues that the court failed to follow the court ruling in Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012). In Chapo, the court, in relevant part, stated the following:

> …there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question….
>
> We have thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category. *Howard*, 379 F.3d at 949; *see, e.g., Wall*, 561 F.3d at 1068-1069)….

Chapo, 682 F.3d at 1288-1289.[2]

However, the court's ruling does not require that there be a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question, or specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can

[2] In Wall v. Astrue, 561 F.3d 1048, 1068-1069 (10th Cir. 2009) and Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004), which were both cited to in Chapo, 682 F.3d at 1288-1289, the courts held that the ALJ can engage in less extensive analysis where none of the record medical evidence conflicts with the ALJ's RFC findings. However, in Wall, the record did not contain any opinions from a treating or examining physician indicating that claimant was totally disabled. By contrast, in the case before the court, there is an opinion from a treating physician that plaintiff has been disabled since January 9, 2007 (R. at 584).

determine plaintiff's RFC. The problem in the case before the court is that the only medical evidence before the ALJ concerning plaintiff's RFC were the opinions of Dr. Timmerman, none of which were adopted by the ALJ in his RFC findings. The ALJ failed to provide convincing and reasonable explanations for his RFC findings. The holding in Chapo does not change the requirement in Fleetwood that to the extent that there is very little medical evidence directly addressing a claimant's RFC, the ALJ made unsupported findings concerning plaintiff's RFC.[3]

Defendant also cites to Chapo, which held as follows:

> Rather, the ALJ accorded weight only to Dr. Amin's opinion, and then tempered it, *in the claimant's favor*, by capping Ms. Chapo's RFC at the light level…we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit…
>
> Here, we hold only that, if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.

Chapo, 682 F.3d at 1288. The defendant argues that this holding is equally applicable to the case presently before the court (Doc. 18 at 3).

[3] Unlike Fleetwood, or the case presently before the court, in Chapo, the record included two physical RFC assessments (by Dr. Amin and Dr. Krause), Chapo, 682 F.3d at 1287. The court in Chapo reversed the decision of the Commissioner and remanded the case for further hearing. On remand, even with two physical RFC assessments, the court was troubled because of the staleness of one of those assessments, and encouraged the ALJ on remand to obtain an updated exam or report. Chapo, 682 F.3d at 1293.

However, as noted above, the ALJ in this case made some findings to plaintiff's benefit by imposing certain limitations not contained in Dr. Timmerman's report, but, unlike Chapo, the ALJ also adopted a limitation less restrictive than that set forth in Dr. Timmerman's report, which was not to plaintiff's benefit, but to her detriment. Unlike Chapo, where the ALJ gave substantial or great weight to a medical source opinion,[4] but tempered some of the opinions in plaintiff's favor, the ALJ in the case before the court only stated that he gave "some" weight to the opinions of Dr. Timmerman, and in fact rejected all of his opinions, tempering some opinions in plaintiff's favor, but also finding in one instance that plaintiff was less limited than Dr. Timmerman had indicated. As for the ALJ's determination that plaintiff's environmental limitation was less restrictive than that set forth in Dr. Timmerman's report, and thus not to plaintiff's benefit, the court previously indicated that the ALJ misstated the evidence and failed to provide a convincing or reasonable rationale for finding that plaintiff need only avoid concentrated exposure to fumes, odors, etc.

In summary, in the case before the court, the ALJ did not give substantial or great weight to a medical source opinion and then temper it in plaintiff's favor. Instead, the ALJ in the case before it stated he gave the medical source opinion only

---

[4] At another point in the opinion, it states that the ALJ gave "great weight" to the opinions of Dr. Amin. Chapo, 682 F.3d at 1292.

some weight, but in fact did not adopt any of the medical source's limitations. Instead, the ALJ tempered some of the limitations in plaintiff's favor, but also made a limitation to plaintiff's detriment in finding that plaintiff in this area was less limited than Dr. Timmerman had indicated, and the court found that the ALJ misstated the evidence and failed to provide a convincing or reasonable rationale for its conclusion. For these reasons, the court finds that the holding in Chapo does not govern the facts of the case before the court.

IT IS THEREFORE ORDERED that defendant's motion to alter or amend the judgment (Doc. 18) is denied.

Dated this 16th day of January, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge